**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**KIM A. KIRSCH,**

                                        **Plaintiff,**

**v.**

                                                        **15-CV-721**

**BOARD OF EDUCATION OF THE**
**WILLIAMSVILLE CENTRAL SCHOOL**
**DISTRICT, et al.,**

                                        **Defendants.**

---

## REPORT AND RECOMMENDATION

This case was referred to the undersigned by the Hon. Richard J. Arcara, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #9.[1]

Plaintiff Kim Kirsch ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983, alleging violations of her First Amendment right to free speech against the following Defendants: the Board of Education of the Williamsville Central School District ("the Board"); the Williamsville Central School District ("the District"); and Scott G. Martzloff ("the Superintendent" or "Martzloff") (hereinafter collectively referred to as "Defendants"). Dkt. #1 ("Compl.").

---

[1] On March 8, 2016, this action was re-assigned to Hon. Lawrence J. Vilardo, D.J. Dkt. #15.

Currently before the Court is Defendants' Motion for Summary Judgment. Dkt. #25.[2] For the following reasons, the Court recommends that Defendants' motion be granted in its entirety, and the Complaint be dismissed.

## FACTUAL BACKGROUND

The following facts are drawn from the parties' Local Rule 56(a)(1) statement of facts and supporting exhibits. Dkt. ##28-3, 31-7.[3]

### I.      Parties

Plaintiff was employed as Assistant Superintendent for Human Resources by the District on December 7, 2007, by former Superintendent Howard Smith ("Smith"). Upon Smith's retirement, the Board hired Martzloff as Superintendent of Schools in 2011.

Plaintiff's duties included directing the program for recruitment and selection of personnel; interviewing applicants and making recommendations to the

---

[2] In connection with the pending motion, Defendants submit an Attorney Declaration (Dkt. #25-1), with supporting Exhibits 1 through 52 (Dkt. ##25-2 through 27-18), Statement of Undisputed Facts (Dkt. #28-3), and Memorandum of Law (Dkt. #28-2). In response, Plaintiff has filed an Attorney Declaration (Dkt. #31) with supporting Exhibits A through F (Dkt. ##31-1 through 31-6), Responding Statement of Facts (Dkt. #31-7), and Memorandum of Law Opposing Summary Judgment (Dkt. #33).

[3] Fed. R. Civ. P. 56 provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56 (c)(1)(A). Plaintiff's Responding Statement of Facts ("Pl. Stmt." Dkt. #31-7), does not contain citations to the record. She is reminded that a "District Court is not required to scour the record on its own in a search for evidence when the [nonmovants] fail to present it." *CILP Associates, L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 125 (2d Cir. 2013) (citation and internal quotation marks omitted).

Superintendent for all appointments; serving as the District's spokesperson for all matters pertaining to labor relations; reviewing and designing procedures to ensure the District's compliance with state and federal laws, regulations and policies; having responsibility for personnel and payroll procedures; and performing such other tasks and assuming such responsibilities as directed by the Superintendent of Schools.

At all times relevant to Plaintiff's claims, Plaintiff reported directly to the Superintendent.

## II.    Plaintiff's Performance

Plaintiff's End of Year Evaluation for the 2011-2012 and 2012-2013 academic years both contained "Recommended Areas of Focus," which were the same for both academic years. Def. Ex. 18. Those areas included long-term planning and possible efficiencies in staffing levels, building strong relationships with bargaining unit leaders, maintaining best practices in Human Resources, and problem solving with challenging employees. *Id.* End of Year Evaluations were written by Martzloff.

Plaintiff's End of Year Evaluation for the 2013-2014 school year indicated that she had performed satisfactorily in some areas, but her overall performance for the school year was "not satisfactory." Def. Ex. 18. The Superintendent noted that Plaintiff failed to respond to the Superintendent's requests and directives; failed to address or improve in the areas of focus specified in her previous evaluations; and failed to communicate important information to the Superintendent. Martzloff also observed that Plaintiff was forwarding confidential District e-mails to her personal e-mail account and that a "major payroll problem" had occurred under her supervision and control. *Id.*

3

### III.    Concerns About Martzloff

*A.    General Discussions*

In 2011,  the first year of the Superintendent's tenure in the District, Assistant Superintendents Thomas Maturski ("Maturski"), Anna Cieri ("Cieri") and Marie Balen ("Balen"), and Superintendent of Technology, Peter Ciarelli ("Ciarelli"),[4] met with Plaintiff to discuss their individual workplace concerns regarding Martzloff.

A second meeting was held during the 2012-2013 academic year at Maturski's house where Plaintiff, Cieri and Maturski discussed Martzloff. Plaintiff maintained a written list of workplace concerns regarding the Superintendent.

In October 2013, the four Assistant Superintendents (including Plaintiff) met with Laura Purcell ("Purcell"), then-District counsel, in October of 2013, at the staff cafeteria of Williamsville North High School.

In February 2014, all four Assistant Superintendents planned to meet with a retired administrator who had worked in a different district, Mike Glover ("Glover"), to discuss their concerns about the Superintendent. At this time Plaintiff was communicating with the others through personal email accounts. According to Plaintiff, she and the other Assistant Superintendents wanted to "keep quiet" the anticipated meeting with Glover. Def. Ex. 16 at 351-354.

---

[4] Ciarelli retired in July of 2012.

The other Assistant Superintendents ultimately declined to attend the meeting. Plaintiff met alone with Glover on March 1, 2014, before which she removed Martzloff's employment contract from his personnel file and took it with her.

B.    *June, 2014 Meeting*

On June 15, 2014, Plaintiff and Michelle Licht ("Licht"), President of the Williamsville Teachers Association ("WTA"), planned a meeting to discuss the pending transfer of a District teacher and other "concerns" about the Superintendent which they intended to take to the Board. Def. Ex. 27. On the same date, Plaintiff e-mailed Licht, "it is possible that our discussions could be viewed as insubordination--we should probably not share them with others as much as possible . . . ." *Id.* Licht responded, "I do not want the [Board] to have any other option other than to buy out his contract." *Id.*

Plaintiff and Licht discussed inviting the President of the Williamsville Administrators' Association ("WAA") Charlie Galluzzo ("Galluzzo"), and the other Assistant Superintendents (Cieri, Maturski, and Balen) to the meeting. Licht wrote, "If your colleagues don't want to join us, I think you, Charlie, and I would still have a significant impact, but I will go alone if it comes down to it. I thought the tact [sic] I would take for our initial meeting is that if all six of us go to the [Board], there is an opportunity to find a resolution quietly, behind closed doors." Plaintiff responded, "I hope my colleagues can find the courage to join us . . . ." Def. Ex. 27.

A meeting was held on June 23, 2014, at the WTA office including Plaintiff, Licht, WAA president Galluzzo, and the other Assistant Superintendents (Cieri,

Maturski, and Balen). All of the participants at the meeting stated that the Superintendent was not "redeemable" or not "fixable." Def. Ex. 16 at 112-114.

### C.    Martzloff Accesses MailMeter

In June, 2014, Martzloff sought the assistance of one of the District's Information Technology ("IT") employees, so that he could obtain access to the District's program that stores the District's e-mails, MailMeter. Def. Ex. 11 at 3370 *et seq.*; Ex. 4A at 13-14. The Superintendent's access to MailMeter program was within his authority, and the Superintendent was the sole person in the District with authority to grant access to the program, including to himself. Def. Ex. 16 at 131-133.

On June 30, 2014, Mark Koedel, another IT employee, informed Plaintiff about the Superintendent's access to MailMeter. Def. Ex. 4A at 12-14, 174-178; Ex. 4B at 43-44. After speaking to Mark Koedel and District counsel Purcell, Plaintiff called Licht, Galluzzo and the other Assistant Superintendents to a meeting during which she informed the attendees that the Superintendent had access to MailMeter and that his access was improper and in violation of rules and procedures. Def. Ex. 4A at 174-178.[5] During that meeting, Plaintiff requested to speak Dr. Patricia Losito ("Dr. Losito"), then the vice-president of the Board of Education, pursuant to advice from District counsel Purcell.  Def. Ex. 19 at 32-42; Pl. Ex. D at 244.

---

[5] Plaintiff asserts, without citation to the record, that as a matter of existing practice and understanding, only two employees had access to MailMeter: the Assistant Superintendents for IT and the Assistant Superintendents for Human Resources, including Plaintiff. She acknowledges, however, that the Superintendent has authority to grant access to himself. Pl. Stmt. ¶ 24.

D.    *Plaintiff Voices Concerns to Dr. Losito, Board Vice-President*

Plaintiff met with Dr. Losito the same day and reported the following specific issues concerning Martzloff: (1) granting himself access to the District email MailMeter investigate module; (2) his transfer of a teacher to a different school; (3) the child of a Board member lost his diploma and a new one was issued; (4) the District purchased new basketball backboards for the school attended by Martzloff's children; and (5) the District was changing transportation vendors.  Plaintiff admits that the Superintendent did not violate any District policies. Def. Ex. 4A at 23, 184-185; Ex. 4B at 44; Ex. 16 at 115, 213-214, 265; Ex. 20 at 77-79.

The issue involving the teacher transfer had been resolved through a grievance process before Plaintiff saw Dr. Losito on June 30, 2014. Def. Ex. 19 at 39.

With regard to Plaintiff's allegations of favoritism, Dr. Losito testified that she "thought it was more or less a courtesy but I don't believe that it was just a person on the Board. I think anybody could have gone through the process and gotten a diploma replaced if something happened." Def. Ex. 19, at 39-40.

Dr. Losito further testified that, with respect to the backboard purchase, "[t]here was going to be a [roll] out of replacements on several of the backboards throughout the districts . . . . In this particular school . . . aesthetically there were needs with that building so that was one of the things that was going to be replaced. And also at South High School there's going to be replacements of backboards." *Id.* at 40-41.

Plaintiff also maintained her own written list of issues relating to the Superintendent's hiring process, his recommendation of candidates for tenure, firing of staff, reorganizing the IT Department, and changing the agenda for leadership meetings. Def. Ex. 34. She testified, however, that the Superintendent had authority to recommend candidates for hiring to the Board; to recommend candidates for tenure to the Board; to reorganize the IT Department; to terminate staff; and to change the agenda for leadership meetings. Def. Ex. 16 at 216-227, 229-23. Plaintiff also testified that she forwarded email communications by or about the Superintendent to her personal email address. *Id.* at 269-272. Additionally, her communications with Licht and the other Assistant Superintendents about Martzloff were made through personal email accounts rather than through District or business accounts. *Id.* at 351-354.

E.    *Investigation of Human Resources Department*

In July 2014, Martzloff received information from two different Board members about complaints made against Plaintiff by her subordinates. As a result, he retained Phillip McIntyre, Esq. ("McIntyre") to conduct an investigation of the Department in connection with allegations of a hostile work environment.

In his initial report on July 31, 2014, McIntyre wrote, "whatever problems exist in the Department, they do not implicate applicable laws regarding employment discrimination, harassment and retaliation, whistleblowing, or bullying. Nor do they constitute a violation of the District policies and rules of conduct . . . ." Def. Ex. 26. He went on to report multiple findings of failings and deficits on the part of Department management, which was comprised of Plaintiff and Patti Grupka, Director of Labor

8

Relations. *Id.* McIntyre identified "divisiveness and lack of communication as broad issues to be addressed." *Id.*

### F.    Administrative Leave, Charges, and 3020-a Hearing

On August 12, 2014, the Board voted to place Plaintiff on paid administrative leave pending further investigation, and Plaintiff was notified of the leave in writing on August 13, 2014. While on paid administrative leave, Plaintiff was still an employee of the District and subject to its fiduciary duties and duty of loyalty.

On August 18, 2014, Licht sent a letter to 800 members of the WTA summarizing workplace complaints about the Superintendent and claimed a "crisis of leadership" in the District. Def. Ex. 52.  The letter referenced Plaintiff by name and her status as being on leave. Plaintiff was aware that the letter was to be sent and did not object to its inclusion of her name or status.

Dr. Losito, in turn, wrote a letter to Licht dated August 20, 2014, objecting to Licht's letter as "inflammatory," "mudslinging," and grounded in a "personal dislike of the Superintendent's leadership style." Def. Ex. 52.

While Plaintiff was on administrative leave, she participated in drafting a letter from the WTA responding to Dr. Losito.  Def. Ex. 16 at 158-159, 183, 192, 203. Plaintiff also solicited comments from District counsel Purcell and retired District Superintendent Howard Smith ("Smith") in drafting the letter.  Def. Ex. 16 at 159-160. The six-page letter, dated August 23, 2014, was sent to Dr. Losito and copied to the

Board and the WTA membership, detailing the complaints against Martzloff and again discussing Plaintiff's placement on leave. Def. Ex. 52.

After Plaintiff was placed on paid administrative leave but before formal charges were filed against her, Defendants were served with Plaintiff's Notice of Claim dated September 15, 2014, which asserts the same claims brought in this action. Plaintiff shared the Notice of Claim with the media and the WTA, and transmitted the Notice of Claim to the District on the date of the Board meeting. Def. Ex. 10 at 4780. Pursuant to New York General Municipal Law § 50-h, Plaintiff was examined under oath about her claims.

The District filed administrative charges against Plaintiff on December 9, 2014, alleging a total of 113 specifications, including Incompetence, Misconduct, Neglect of Duty, Insubordination, and Conduct Unbecoming of an Assistant Superintendent. Def. Ex. 3.

The 3020-a Hearing included: 49 days of testimony from 27 witnesses, including 8 days of testimony from Plaintiff, with both parties calling, examining and cross-examining the witnesses; over 6,200 pages of hearing transcripts; over 220 evidentiary exhibits, including Plaintiff's § 50-h testimony; and post-hearing submissions from Plaintiff and the District, each over 100 pages. At Plaintiff's request, the 3020-a Hearing was open to the public except for some limited confidential information related to non-parties.

During the hearing, Plaintiff admitted to certain conduct that formed the basis for the charges, including: forwarding work emails to her personal email address;

removing the Superintendent's contract from his personnel file for a meeting with a third party without the Superintendent's knowledge or permission; removing notes from the Superintendent's personnel file without his permission or knowledge; and meeting jointly with other Assistant Superintendents and Presidents of the WTA and WAA.

In a Decision dated June 12, 2017, Hearing Officer John Trela ("Trela") determined that "[t]here is no proof whatsoever that bringing this 3020a action against Dr. Kirsch was an act of 'retaliation' by either the Superintendent or the School Board, but rather arose from the investigation that ensued which exposed much of what became the charges and specification against Respondent." Def. Ex. 23 at 110. Further, "[t]here is no conspiracy or retaliation on the part of the Board in this record as alleged by Respondent and the charges are not frivolous." *Id.* at 115. "The testimony and evidence presented against Respondent proves that the District was correct in finding her to be 'insubordinate' in what she has done . . . Respondent's own emails are proof of this." *Id.* Trela concluded that "the District has met its burden of proof required by the standard" which he set forth as "a preponderance of the evidence." *Id.*

Ninety-three of the 113 specifications were determined to be proven, with 10 dismissed as set forth in the 3020-a Decision, which concluded, among other things, that the District had proven its case, Plaintiff would be terminated from her employment, and that none of the charges brought by the Board were frivolous. *Id.* at 129.

G.    *Aftermath*

On June 12, 2017, the same date that the 3020-a Decision issued, the Board voted to terminate Plaintiff's employment with the District. From August 13, 2014

11

when Plaintiff was placed on administrative leave until the termination of her employment on June 12, 2017, Plaintiff was paid her full salary and benefits. Def. Ex. 16 at 294.

Plaintiff challenged the 3020-a Decision by initiating an Article 75 proceeding in New York State Supreme Court, Erie County. Def. Ex. 45.  On September 26, 2017, Hon. Timothy J. Walker, A.J.S.C. dismissed Plaintiff's Petition and confirmed the 3020-a Decision in its entirety. Def. Ex. 24.  Plaintiff did not appeal the Article 75 decision.

Plaintiff retained her membership in the New York State Association of School Personnel Administrators throughout the time she was on administrative leave from the District, and served as President of that organization. She is presently employed as the Shared Director of Human Resources for Erie 2 Chautauqua Cattaraugus BOCES.

## DISCUSSION AND ANALYSIS

## I.    Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a). A factual dispute is material "only if it has some effect on the outcome of the suit." *Eagley v. State Farm Ins. Co.*, No. 13-CV-6653, 2015 WL 5714402, at *5 (W.D.N.Y. Sept. 29, 2015) (citation and quotation omitted). Moreover, a genuine issue exists as to a material fact "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam), and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)).

## II.    Plaintiff's Rule 56(d) Request

At the outset, Plaintiff seeks additional time pursuant to Fed. R. Civ. P. 56(d)(2) to obtain documents pursuant to a pending state Freedom of Information Law ("FOIL") request. Pl. Mem. 6-7.

On or about January 13, 2015, Plaintiff requested from the District's Information Officer, "all emails sent to or from the District e-mail account of Superintendent Scott Martzloff from July 1, 2012 to January 13, 2015." Silverstone Decl. ¶ 5. That request was denied.

In August, 2015, Plaintiff commenced an Article 78 proceeding under New York Civil Practice Law and Rules seeking to compel Defendants to comply with her request. The Supreme Court, Erie County, granted her petition following reconsideration on March 3, 2016. The District unsuccessfully appealed to the Appellate Division and the New York Court of Appeals. *See Kirsch v. Bd. of Educ. of Williamsville Cent. Sch. Dist.*, 152 A.D.3d 1218 (4th Dep't 2017), *lv. denied*, 155 A.D.3d 1610 (4th Dep't 2017),

*lv. denied*, 31 N.Y.3d 904 (2018). According to Plaintiff, no records were provided as of June 14, 2018. Silverstone Decl. ¶ 11.

This action was commenced on August 3, 2015, and discovery was completed by February 28, 2018. Dkt. ##1, 20. During the discovery period, Plaintiff's requested e-mails in connection with her claims were provided. However, at oral argument and in her memorandum of law opposing summary judgment, Plaintiff avers that additional e-mails may reveal evidence of retaliatory animus by Martzloff. Pl. Mem. 6-7.

Rule 56(d) of the Federal Rules of Civil Procedure permits limited discovery to enable opposition to summary judgment to be filed if the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). "The affidavit must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the affiant has made to obtain those facts; and why those efforts were unsuccessful." *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994); *accord Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151 (2d Cir. 2016). The affidavit must explain with specificity how the facts sought are reasonably expected to create a genuine issue of material fact. *Alphonse Hotel Corp.*, 828 F.3d at 151.

"[A] court plainly has discretion to reject a request for discovery if the evidence sought would be cumulative or if the request is based only on speculation as to what potentially could be discovered, and a bare assertion that the evidence

14

supporting plaintiff's allegations is in the hands of the moving party is insufficient to justify the denial of summary judgment." *Crye Precision LLC v. Duro Textiles*, LLC, 689 Fed. Appx. 104, 108 (2d Cir. 2017) (internal citation and quotation marks omitted). Thus, the party seeking to delay resolution of a summary judgment motion pursuant to Rule 56(d) must provide the basis for believing that the discovery requested exists. *Alphonse Hotel Corp.*, 828 F.3d at 151. "A district court's denial of more time to conduct discovery pursuant to Rule 56[(d)] is subject to reversal only if it abused its discretion." *Paddington Partners*, 34 F.3d at 1137 (alteration added).

Plaintiff does not state with specificity as to what relevant evidence the materials purportedly contain. To the contrary, she makes a broad request for "all e-mails" to or from Martzloff's District e-mail account spanning a two-and-a-half-year period. Silverstone Decl. ¶ 5. a Defendants have already provided some of these e-mails in response to Plaintiff's First Set of Demands. Plaintiff's request is therefore cumulative.

Moreover, Plaintiff requested this relief in her memorandum of law opposing summary judgment, with an attorney declaration setting forth only the FOIL action procedural history in the state courts. Pl. Mem. 6-7; Silverstone Decl. ¶¶ 5-13. As the Second Circuit Court of Appeals has held, "[a] reference to Rule 56[(d)] and to the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[(d)] affidavit . . . and the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate . . . ." *Paddington Partners*, 34 F.3d at 1137 (alterations and ellipses added).

Plaintiff's FOIL matter was pending in the state courts since January, 2015. She was therefore aware of these documents since the inception of the federal proceedings. Although the Court is mindful that Rule 56(d) is by its nature part and parcel to the summary judgment stage of the proceedings, Plaintiff offers no explanation as to why she did not request an extension of the discovery deadlines or the scheduling order for dispositive motions. Finally, Plaintiff's request is unlikely to alter the outcome of the instant summary judgment motion. As discussed in detail below, Plaintiff's prima facie claim of First Amendment retaliation fails as to the first element, which requires her establish that her speech was constitutionally protected. *See infra* at III.B. Therefore, this Court respectfully recommends that Plaintiff's request for additional time to obtain the Martzloff e-mails be denied.

## III.  Retaliation

### A.  *Collateral Estoppel*

Plaintiff asserts that the District investigated her, placed her on leave, lodged disciplinary charges against her, and ultimately terminated her in retaliation for Plaintiff reporting her concerns regarding Martzloff's governance of the District to the Board of Education. Compl. 8-9.

Defendants contend that Plaintiff cannot maintain her cause of action for retaliation because this issue was fully litigated in a full evidentiary hearing in the administrative proceeding brought pursuant to New York Education Law § 3020-a ("3020-a Hearing") and is thus subject to preclusion. Def. Mem. 17-23. Plaintiff argues

that her First Amendment claims were not fully litigated in the 3020-a Hearing. Pl. Mem. 14-17.

Generally speaking, the Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give state court judgments the same preclusive effect they would receive in courts of the same state. *Burkybile v. Bd. of Educ. Of Hastings-On-Hudson Union Free School*, 411 F.3d 306, 310 (2d Cir. 2005). Although administrative adjudications are not typically considered state court judgments within the scope of the Full Faith and Credit Act, federal actions such as this based upon 42 U.S.C. § 1983, will impute state administrative fact-finding with the same preclusive effect as would normally be given to courts of the same state. *See Burkybile*, 411 F.3d at 310 (citing *University of Tenn. v. Elliott*, 478 U.S. 788, 796,799 (1986)). Additionally, "[l]ike a prior judicial finding of fact, in order to have preclusive effect over a subsequent fact-finding or legal analysis, a prior administrative determination must have resolved the identical issue, and the issue must have been actually and finally decided in the prior adjudication." *Matusick v. Erie County Water Auth.*, 757 F.3d 31, 45 (2d Cir. 2014)

New York Education Law sets forth procedures for hearings under Section 3020-a which are akin to traditional civil litigation, including "extensive litigation procedures for hearings, including motion practice, bills of particulars, mandatory disclosure, discovery, subpoena power, right to counsel, cross-examination, testimony under oath, and a full record." The statute clearly authorizes a hearing officer to adjudicate questions of fact, charges, and penalties." *Burkybile*, 411 F.3d at 310 (citing N.Y. Educ. L. § 3020-(3)(c); § 3020-a(4)).  Plaintiff appealed the administrative decision bringing a special proceeding pursuant to Article 75 of the CPLR in New York State

Supreme Court. The Supreme Court affirmed the decision in its entirety in an Order and Judgment dated September 26, 2017. Def. Ex. 24. Plaintiff did not further appeal the administrative decision.

During the 3020-a Hearing, Plaintiff affirmatively raised the issue of retaliation as a defense. Her conduct and claim of retaliation was litigated over 49 hearing days resulting in more than 6,200 pages of transcript and involved submission of over 225 exhibits. Plaintiff was provided with extensive, voluminous discovery, with a full opportunity to present and cross examine witnesses, and to fully argue the merits. Closing briefs consisted of more than 300 pages and numerous exhibits.

The legal standard in the 3020-a Hearing was proof by a preponderance of the evidence. *Martin v. Ambach,* 67 N.Y.2d 975 (1986). The resulting administrative decision was 129 pages long and included detailed analysis of the arguments and evidence put forth by both parties. Trela concluded that the "charge of retaliation by the Superintendent is not supported by the evidence in the record," and that "[t]here is no conspiracy or retaliation on the part of the Board in this record as alleged by Respondent and the [disciplinary] charges are not frivolous." Def. Ex. 23 at 114-15.

In *Burkybile*, *supra*, the Second Circuit Court of Appeals held that a 3020-a Hearing was given preclusive effect and that the plaintiff was given a full and fair opportunity to litigate the issues and therefore, "the facts found at Burkybile's Section 3020–a hearing must be accorded preclusive effect." 411 F.3d at 312. Here, Plaintiff seeks to rely on the same evidence as presented in the hearing below, and, as in

*Burkybile*, the Court must accept and apply the hearing officer's determination of the facts established in that proceeding.

Also contrary to Plaintiff's contention, the First Amendment retaliation claim was material to the 3020-a Hearing. Pl. Mem. 15.

> Under New York law, collateral estoppel bars the relitigation of an issue clearly raised in a prior action or proceeding and decided against that party or those in privity. . . .
>
> Furthermore, the issue must have been material to the first action or proceeding and essential to the decision rendered therein . . ..

*Burkybile*, 411 F.3d at 313 (citations and quotations omitted). The *Burkybile* Court declined to preclude the plaintiff's retaliation claim where such claim was *not* raised before the administrative body: "the record does not reflect that any constitutional claims were raised at the Section 3020–a hearing, so we do not take these as decided." 411 F.3d at 313.

In contrast, the issue of retaliation in this case, and the facts asserted in support of the retaliation claim, in both the administrative hearing and in this action are identical. There is no question that Plaintiff affirmatively raised her retaliation claim during the disciplinary proceeding. The 3020-a Decision shows that Plaintiff asserted retaliation as the primary basis for her defense. *See* Def. Ex. 23 at 49 ("Dr. Kirsch is a whistleblower plain and simple and regardless of the ultimate accuracy or merits of the underlying complaints, a whistleblower must be protected from retaliation."); *see also id. at* 26-27, 30, 34, 39, 42, 43, 48, 70, 75, 93, 94, 112. The 129-page decision reveals hearing officer Trela explicitly rejected Plaintiff's claim:

> In her closing brief [Plaintiff] believes that she had to do what
> she did because she believed that as an advocate for what
> she believed in, caused her to rally against the
> Superintendent. [She] took a stand because she wanted to
> change what the Superintendent was doing. This however,
> does not change the fact that the behavior that she engaged
> in was insubordination.

Def. Ex. 23 at 114. Trela concluded that "[t]here is no conspiracy or retaliation on the

part of the Board in this record as alleged by [Plaintiff] and the charges are not

frivolous." *Id.* at 115.  Further, he noted that "while Respondent appears to be convinced

that the Superintendent and Board have retaliated against her, in reality, the truth,

based on the evidence presented, is that what Respondent believes to be 'retaliation' is

indeed 'disciplinary action' for her misconduct which is chargeable under 3020a of the

Education Law."  *Id.* at 126; *see also id. at* 110, 121, 124.

Plaintiff submits her retaliation claim should not be precluded because it

was presented as a defense in the administrative proceeding and as an affirmative

cause of action here. Pl. Mem. 16. The Court rejects this argument.

In determining Plaintiff's claim of retaliation, Trela considered the same

legal principles, examined the same evidence, and applied the same legal standards.

*See Matusick*, 757 F.3d at 48-49.  Trela heard evidence that the charges against

Plaintiff were motivated by retaliation against her whistleblowing activities. In light of that

claim and the evidence presented, he determined that her termination was warranted.

The case law in this Circuit supports preclusion in this instance. *See Mazur v. NYC

Dep't of Ed.*, 621 Fed. Appx. 88, 89 (2d Cir. 2015) (summary order) (affirming district

court's grant of summary judgment on collateral estoppel grounds where plaintiff-

teacher presented discrimination theories as part of her defense during her 3020-a

Hearing, and the hearing officer, after a full and fair litigation, determined that her discipline was justified); *accord Ferraro v. NYC Dep't of Ed.*, No. 17-3456, 2018 WL 5881663, at *3 (2d Cir. Nov. 9, 2018) ("We agree with the district court that these defenses were litigated and resolved in the administrative proceeding. There is no dispute that [plaintiff] raised these defenses, the hearing officer considered and addressed them, and that, if the hearing officer had credited one or more of the them, [he] could have prevailed."); *but see Washington v. N.Y.C. Dep't of Educ.,* No. 16cv9588, 2017 WL 4687982, at *8 (S.D.N.Y. Oct. 16, 2017) (holding that although the discrimination claim raised in § 3020-a Hearing was preclusive of the issue in federal court, the retaliation claim was not because the hearing officer only referred to "retaliation" once in the opinion and never "explicitly addressed or ruled on the merits of any retaliation argument"), *aff'd sub nom. Washington v. N.Y.C. Dep't of Educ.*, No. 17cv3776, 2018 WL 3342324 (2d Cir. July 9, 2018).

The day after the 3020-a Decision issued, the Board convened and unanimously adopted and implemented Trela's recommendation to terminate Plaintiff from her position as Assistant Superintendent of Human Resources. Def. Ex. 25 at 7. The 3020-a Decision then became "official decision of the agency." *Matusick*, 757 F.3d at 46 (hearing officer's recommendations were final for purposes of collateral estoppel where employer adopted the recommendations as the official decision of the entity or agency). The 3020-a Decision rendered against Plaintiff is therefore final for purposes of collateral estoppel.

Plaintiff was given a full and fair opportunity to litigate the very issues before this Court, specifically, the propriety of disciplinary actions against her based on

poor job performance, her termination from employment, and her claim of retaliation. Because "collateral estoppel bars the relitigation of 'an issue clearly raised in a prior action or proceeding and decided against that party or those in privity,'" *see Burkybile*, 411 F.3d at 313, the Court finds that Plaintiff is not entitled to re-litigate her retaliation claim and should be precluded from doing so. Accordingly, it is respectfully recommended that her First Amendment retaliation claim be dismissed.

B.      *Protected Speech*

Assuming, arguendo, that Plaintiff is not estopped from re-litigating the issues presented at the 3020-a Hearing, her retaliation claim fails as a matter of law.

To state a prima facie claim of First Amendment retaliation under Section 1983, a plaintiff "must offer some tangible proof that 1) her speech was constitutionally protected; 2) she suffered an adverse employment action; and 3) a causal relationship between the two existed in that the speech was a substantial or motivating factor for the adverse employment action." *Burkybile*, 411 F.3d at 313 (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir.1999)).

When public employees make statements pursuant to their official duties, they are not speaking as citizens for First Amendment purposes and therefore such speech is not protected. *Pickering v. Board of Education of Township High School District 205*, *Will County, Illinois*, 391 U.S. 563(1968); *Garcetti v. Ceballos*, 547 U.S. 410 (2006).  Thus, "[a] public-employee plaintiff pursuing a claim for First Amendment retaliation must additionally demonstrate that: (1) the speech addressed a matter of public concern; (2) she suffered an adverse employment action; and (3) there is a

22

causal connection between her speech and the adverse action, such that the protected speech was a motivating factor in the adverse action. *See Murray v. Coleman*, No. 08-CV-6383, 2014 WL 2993748, at *1 (W.D.N.Y. July 2, 2014).

As stated above, to show that her speech was protected, Plaintiff must establish that she was speaking "as a citizen on a matter of public concern." *Garcetti v. Ceballos*, 547 U.S. at 418. "Speech involves matters of public concern 'when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Lane v. Franks*, 134 S. Ct. 2369, 2380 (2014) (quoting *Snyder v. Phelps*, 562 U.S. 443, 444 (2011) (internal quotations and citation omitted)). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163–64 (2d Cir.1999) (citations omitted).  "In making its determination, the court should focus on the motive of the speaker, and attempt to discern whether the speech was calculated to redress personal grievances or whether it had a broader public purpose . . . . The key inquiry is whether the statements were made by plaintiff in her role as a disgruntled employee or her role as a concerned citizen." *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 722 (S.D.N.Y. 2005) (citing *Lewis*, 165 F.3d at 163–64).

Further, a court must evaluate whether a plaintiff's alleged "whistle-blowing" comments were made as part of professional responsibilities or as a private citizen. *See Anderson v. State of N.Y., Office of Court Admin. of Unified Court Sys.*, 614

F.Supp.2d 404, 427 (S.D.N.Y.2009). "A public employee's speech need not be mandated by her job description to be made pursuant to her official duties—it is enough that the speech be in furtherance of the purposes of the employment. *Kilduff v. Rochester City Sch. Dist.*, 53 F. Supp. 3d 610, 615 (W.D.N.Y. 2014) (citations omitted). While "there is no checklist of factors that the Court considers in making its determination," "the plaintiff's job description; the persons to whom the speech was directed; and whether the speech resulted from special knowledge gained through the plaintiff's employment," may be relevant to the inquiry. *Id.*

Defendants assert that Plaintiff's complaints about the Superintendent were simply workplace complaints made by a "disgruntled employee," Def. Mem. 25, whereas Plaintiff argues that her speech touched upon matters of public concern. Pl. Mem. 11.

Plaintiff's complaints, such as Marzloff's access to MailMeter, teacher transfer procedures, practices of improper favoritism for students connected to District employees and/or Board members, and his alleged absenteeism, were advanced as part of her professional responsibilities as Assistant Superintendent of Human Resources. The evidence, including her personal list of grievances that she maintained, indicates that her concerns were all related in some way to her position. *See* Ex. 34. In her capacity as Assistant Superintendent of Human Resources, Plaintiff was required to field and resolve personnel complaints from District employees. *See* Def. Ex. 51. The record indicates that several District employees disagreed with the Superintendent's leadership, and that Plaintiff amassed those complaints in pursuit of having the Superintendent unseated. *See, e.g.,* Def. Ex. 27 (e-mail from Licht to Plaintiff 7/1/16, "I

24

agree about not making this about a single issue. I do not want the [Board] to have any other option than to buy out his contract."). Simply because the speech at issue here involved a public school does not transform workplace grievances into a matter of public concern, as Plaintiff urges. Pl. Mem. 3. ("All the issues raised by Dr. Kirsch to Dr. Losito were of serious concern to the parents, students and employees of the District. Dr. Kirsch was and is well-versed in matters of compliance and best practices for public school governance. Thus, all the issues discussed were matters of serious and important public concern."). To the contrary, the documented communications between Plaintiff and the other District employees repeatedly focused on the way the Superintendent was performing his duties as such.

Plaintiff compiled the grievances of District employees and union representatives, solicited the advice of District counsel regarding grievances brought to her, and ultimately complained to Dr. Losito, vice-president of the Board, about the Superintendent's purported failings. Plaintiff appears to acknowledge that these actions arose from her official duties:

> Plaintiff, as Assistant Superintendent for Human Resources, was keeping records about the growing concerns as the result of being informed on a regular basis about changes to existing policy, protocol and procedure by the Assistant Superintendents, Building Principals and others in the District. Despite the fact that the Superintendent had the authority to perform the actions, the Superintendent was not discussing them with, nor informing the Assistant Superintendents of actions that he took, causing the Assistants the inability to manage or effectively communicate changes to practices and procedures to other District administrators and staff members.

Pl. Stmt. ¶ 32.

The evidence of record supports Plaintiff's role as a public employee "air[ing] a complaint or grievance, or expresse[ing] concern about misconduct . . . ." *Weintraub v. Bd. of Educ. of City of N.Y.*, 489 F.Supp.2d 209, 219 (E.D.N.Y. 2007), *aff'd* 593 F.3d at 196. It is undisputed that Plaintiff requested that Licht not disclose their discussions with others. After conferring with District counsel, Plaintiff raised the collective concerns to Dr. Losito, vice-president of the Board of Education.  The fact that Plaintiff corresponded internally with other District employees and did not publicize her concerns underscores that she was speaking within her official capacity. *See, e.g., Massaro v. N.Y.C. Dep't of Ed.*, 481 Fed. Appx. 653, 655–56 (2d Cir. 2012) (holding that "the district court's conclusion that [the plaintiff] spoke as an employee rather than a private citizen is supported by the facts that she aired her complaints only to several school administrators rather than to the public . . . ."); *McGuire v. City of N.Y.*, No. 12-CV-814, 2015 WL 8489962, at *7 (E.D.N.Y. Dec. 8, 2015) ("[The plaintiff's] speech was made through official channels. Courts in this circuit have found, that where an employee speaks only through official channels, rather than publicly, they are more likely to be speaking as an employee."); *Anglisano v. N.Y. City Dep't of Educ.*, No. 14-CV-3677, 2015 WL 5821786, at *7 (E.D.N.Y. Sept. 30, 2015) ("While plaintiff asserts that she was acting as a 'private citizen,' the fact that she spoke only to her direct supervisor and to the principal belies this conclusory assertion.").

Finally, the record shows, and the parties do not dispute, that Plaintiff's speech unquestionably resulted from knowledge gained through her position. The content of Plaintiff's communications, which included Martzloff's personnel decisions (hiring, tenure determinations); leadership style ("concerns of micro-management,"

"unwillingness to use chain of command"); and his relationships with other District employees (preferential treatment); indicates that Plaintiff "was only able to complain about [her supervisor's] acts because of the information she obtained as a public employee." *Kelly v. Huntington Union Free Sch. Dist.*, No. 09-CV-2101, 2012 WL 1077677, at *14 (E.D.N.Y. Mar. 30, 2012). *See* Def. Ex. 38. Indeed, many of the charges lodged against Plaintiff in the 3020-a Hearing involved her dissemination of confidential communications in relation to Martzloff. *E.g.* Def. Ex. 23 at 124.

In this case, Plaintiff, as a manger of the District's Human Resources Department, had a private audience comprised of District employees and union leaders. The complaints regarding Martzloff's governance were disseminated to her by virtue of her professional capacity. The undisputed facts and evidence of record therefore support a finding that Plaintiff was not speaking on a matter of public concern, nor was she speaking as a private citizen. Because this does not constitute protected speech for purposes of the First Amendment, her claim of retaliation fails, and should be dismissed.[6]

In summary, even if Plaintiff's claim of retaliation was not barred by the doctrine of collateral estoppel, she nonetheless fails to meet her burden of showing that she engaged in speech protected by the First Amendment. The Court therefore

---

[6] In light of this determination, the Court need not address the element of causation. *See, e.g.*, *Leppert v. Cty. of Suffolk*, No. 216CV3723, 2019 WL 1050999, at *7 (E.D.N.Y. Mar. 5, 2019) ("As the elements of a First Amendment claim are conjunctive, the Court need not analyze whether Plaintiff has made out the third element.").

respectfully recommends that Plaintiff's retaliation claim be dismissed on this alternative basis.

## IV.    Defamation

Plaintiff asserts a claim of defamation based on remarks made by Martzloff at an administrative retreat on August 22, 2014. Specifically, she claims that Martzloff told a large group of administrators that Plaintiff had been placed on "unpaid leave." Pl. Mem. 18; Def. Ex. 16 at 36. Defendants move for summary judgment on the grounds that the statement was not defamatory and protected by qualified privilege. Def. Mem. 38.

"Under New York law, the elements of a defamation claim are 'a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute defamation per se.'" *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (quoting *Dillon v. City of N.*Y., 261 A.D.2d 34 (1st Dep't.1999)). "A statement is defamatory per se if it asserts that the plaintiff committed a serious crime or tends to injure the plaintiff in his trade, business or profession." *Id.* (citing *Albert v. Loksen*, 239 F.3d 256, 271 (2d Cir. 2001)).

"One of the defenses to defamation under New York Law is 'qualified privilege.'" *Tomasino v. Mount Sinai Med. Ctr. & Hosp.*, 2003 WL 1193726, at *15 (S.D.N.Y. 2003) (quoting *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001)). A "conditional, or qualified, privilege extends to a 'communication made by one person to another upon a subject in which both have an interest.'" *Liberman v. Gelstein*, 80

N.Y.2d 429, 437 (1992) (quoting *Stillman v. Ford*, 22 N.Y.2d 48, 53 (1968)). Upon a

showing of qualified privilege, the burden shifts to plaintiffs to prove malice:

> In order to overcome the qualified privilege, plaintiff must
> show that the defamatory statement was false and that
> defendant abused the privilege by acting (1) 'with common
> law malice;' or (2) with constitutional malice, which is 'with
> knowledge that the statement was false or with a reckless
> disregard as to its truth.

*Canino v. Barclay's Bank, PLC*, 173 F.3d 843, 1999 WL 132180, at *1 (2d Cir. Mar. 11,

1999) (summary order). Common law malice or "actual malice" "has been defined as

"personal spite or ill will, or culpable recklessness or negligence.'" *Fahnestock & Co.,*

*Inc. v. Waltman*, 935 F.3d 512, 516 (2d Cir. 1991) (quoting *Garson v. Hendlin*, 141

A.D.2d 55, 64 (2nd Dep't 1988) (citation omitted)). Constitutional malice is defined as

"publication with [a] high degree of awareness of [the publication's] probable falsity or

while the defendant in fact entertained serious doubts as to the truth of [the]

publication." *Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 410 (2d Cir. 2000)

(quoting *Harte-Hanks Commc'n, Inc. v. Connaughton*, 491 U.S. 657, 667 (1964)).

        Martzloff denies making the statement, Def. Ex. 17 at 134, although

witnesses[7] at the retreat testified to hearing the "unpaid leave" remark. Def. Ex. 20 at

140; 21 at 83; Ex. 22 at 17-18.  Cieri and another witness, Scott Taylor, testified that

Martzloff later corrected himself or that it was communicated that Plaintiff was in fact on

"paid leave." Def. Ex. 21 at 84; Ex. 22 at 31. All three administrators in attendance

testified that they were previously informed on an earlier date that Plaintiff was placed

on paid leave. Def. Ex. 20 at 137; Ex. 21 at 82; Ex. 22 at 31. For purposes of this

---

[7] Asst. Supt. Cieri, Galluzo, and Scott Taylor were present at the treat.

motion, the Court presumes that Martzloff made the remark alleged and that the remark is untrue.

Here, the statement is alleged to have been made to a small group of administrators by the Superintendent at a professional retreat in connection with Plaintiff's status with the District. As Superintendent, he was expected to report on matters affecting the District, which would include issues of leave. The remark was therefore protected by qualified privilege. *See  Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (finding principal's statements to guidance counselors and superintendent about an employee's ability to perform her duties "were clearly within the scope of the qualified privilege"); *Johnson v. Riverhead Cent. Sch. Dist.*, No. 14CV7130, 2018 WL 4344957, at *11 (E.D.N.Y. Sept. 11, 2018) ("Carney, as school superintendent, and Rogers, as school principal, had a qualified privilege to make statements about Plaintiff, his ability to perform his job, and the school's safety."); *see generally, Santavicca v. The City of Yonkers,* 518 N.Y.S.2d 29 (2d Dept. 1987) ("A qualified privilege arises when a person makes a bona fide communication upon a subject in which he or she has an interest, or a legal, moral, or social duty to speak, and the communication is made to a person having a corresponding interest or duty.").

Plaintiff does not appear to challenge Defendants' invocation of qualified privilege. Thus, in order to survive summary judgment, she is required to raise a triable question of fact whether Martzloff "acted out of personal spite or ill will, with reckless disregard for the statements' truth or falsity, or with a high degree of belief that their statements were probably false." *Cusimano v. United Health Servs. Hosps.*, 91 A.D.3d

1149, 1150 (3d Dep't 2012), *lv. denied*, 19 N.Y.3d 801 (2012) (internal quotation marks omitted).

The evidence in the record indicates that the remark most certainly gave the administrators pause,[8] however, it does not "demonstrate with convincing clarity that statements were made with malice," *Teixeira v. Korth*, 267 A.D.2d 958 (4th Dep't 1999), under either the common law or constitutional standard.

Cieri testified as to the remark, "I don't know if I said it was incorrect or if I said [Martzloff] misspoke . . . . I just know that I indicated to [Scott Taylor, Principal] that it was not accurate." Def. Ex. 20 at 141. Scott Taylor testified that, "I don't remember how it was raised. I know [Martzloff] tried to address it. He couldn't say much at the time. He did say that - - I think the only thing he could say was that she was put on unpaid leave." Def. Ex. 22 at 18. The witnesses indicated that they knew that the statement was inaccurate or incorrect at the time, they also acknowledged that the Superintendent corrected himself a short time after the remark was made. On these facts, it cannot be concluded that malice was the sole motivation for communicating Plaintiff's leave status to her co-workers. *See, e.g., Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118 (S.D.N.Y. 2016) (defendant did not show malice to overcome common interest privilege).

---

[8] Under New York Education Law § 3020-a, pending a hearing on disciplinary charges, an employee may be suspended with pay unless the "employee has entered a guilty plea to or has been convicted of a felony crime concerning the criminal sale or possession of a controlled substance, a precursor of a controlled substance, or drug paraphernalia . . . or a felony crime involving the physical abuse of a minor or student." *Id.* at § 3020-a(2)(b).

Viewing the evidence in the light most favorable to Plaintiff, it points to an error with a good-faith effort made to voluntarily clarify the issue. Plaintiff posits that "Martzloff's anger at the Plaintiff undoubtedly provoked him to take liberties with the truth." Pl. Mem. 23.  Even if Martzloff could be said to possess sufficient "spite or ill will" toward Plaintiff to permit the conclusion that he acted with common-law malice, such malice, "defeats the privilege only if it is the *one and only* cause for the publication." *Albert v. Loksen*, 239 F.3d  256, 272 (2d Cir. 2001) (internal quotation marks omitted, emphasis added); s*ee also Lieberman v. Gelstein*, 80 N.Y.2d 429,  439 (1992) (noting that spite or ill will refers to the defendant's motivation in making the alleged defamatory statement, not his or her general feelings toward a plaintiff). Such is not the case here.

Significantly, no witnesses testified that they understood the Superintendent's remark to imply that Plaintiff "had been placed on leave as a result of criminal activity," as Plaintiff suggests. *Id.* at 20, *see also id.* ("[f]or all intents and purposes, Dr. Marzloff falsely told Dr. Kirsch's peers that she had been placed on leave for commission of a crime."). All of the witnesses testified that they had previous knowledge that Plaintiff's leave was with pay from Martzloff himself.

In sum, there is no evidence on the record sufficient to raise an issue of fact that Martzloff's comment was intended to harm Plaintiff's reputation. *See Grier v. Johnson*, 232 A.D.2d 846, 849 (3d Dep't 1996) ("Conclusory allegations of malice, or charges based upon surmise, conjecture or suspicion, will not defeat a claim of qualified privilege."). The Court recommends dismissal of Plaintiff's claim of defamation.

## V.    Remaining Causes of Action

Finally, Plaintiff has abandoned her causes of action for prima facie tort and intentional infliction of emotional distress. She did not address Defendants' arguments seeking dismissal of those claims, *see* Pl. Mem. 7-23, nor did she assert a factual dispute relating thereto. *See* Pl. Stmt.  Plaintiff's counsel, during oral argument before this Court, conceded that Defendants' arguments on these two claims were unchallenged. *See* Dkt. #37.

Accordingly, the Court recommends dismissal of the fourth and fifth causes of action in the Complaint. *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) ("when a counseled party moves for summary judgment, 'a partial response [by the non-movant] arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.'") (quoting *Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014); footnote omitted); *accord*, *Whitt v. Kaleida Health*, 298 F. Supp. 3d 558, 568 (W.D.N.Y. 2018) (deeming unopposed claims abandoned and declining to consider them).

## CONCLUSION

For all of the above reasons, it is recommended that Defendants' motion for summary judgment (Dkt. #25) be **GRANTED.**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

With respect to Defendants' motion for summary judgment, **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. Proc. 72(b) and Local Rule 72(b).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Report and Recommendation to Plaintiff and Defendants.

**ALL OF THIS IS SO ORDERED.**

DATED:        Buffalo, New York
              March 15, 2019


                                    _*S/ H. Kenneth Schroeder, Jr.*_
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**